FILED IN CLERK'S OFFICE
U.S.D.C. - Newnan

NOV 16 2007

JAMES N. HATTEN, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

**SANDRA Y. GRIZZARD and**
**BILLY JACK GRIZZARD,**
**Plaintiffs,**

**v.**

**DAVOL, INC., and**
**C.R. BARD, INC.,**
**Defendants.**

**CIVIL ACTION NO:** 3 07-CV-107-JTC

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW, Plaintiffs, Sandra Y. Grizzard and Billy Jack Grizzard, by and through their attorneys of record, for causes of action against Defendants, Davol, Inc. and C.R. Bard, Inc., allege and aver as follows:

## I. PARTIES

1. Plaintiff, Sandra Grizzard, is a resident of the State of Georgia residing at 1616 Garrett Creek Rd., City of Bowdon, County of Carroll, State of Georgia 30108.

2. Plaintiff, Billy Jack Grizzard is the spouse of Sandra Grizzard and resides with Plaintiff, Sandra Grizzard, in the State of Georgia and whose residence is located at the same address as Sandra Grizzard in paragraph 1 herein above.

3. Defendant, Davol, Inc., ("defendant" or "Davol") is a foreign corporation having incorporated under the laws of the Delaware. The principal place of business for Davol is located at 100 Sockanosset Crossroads, PO Box 8500, Cranston, Rhode Island 02920. Davol conducts business in the State of Georgia as well as throughout the United States. Said business is primarily for the design, manufacture, labeling, testing, distribution, advertising, marketing, promotion and sell of healthcare products and supplies to distributors, physicians, hospitals and all other providers and facilities. The registered agent for Davol is CT Corporation Systems located at 10 Weybosset St., City of Providence, County of Providence, Rhode Island 02903.

4. Defendant, C. R. Bard, Inc., aka, C. R. Bard, Inc., and C. R. Bard, Incorporated ("defendant"or "Bard") is both a domestic for profit corporation and a foreign corporation incorporated under the laws of the State of New Jersey with its principal office and place of business at 730 Central Avenue, New Providence, New Jersey 07974. Bard is the corporate parent/stockholder of Davol. Bard is a corporation doing business in the State of Georgia that designs, manufactures, labels, tests, distributes, advertises, markets, promotes and sells medical products and supplies to distributors, physicians, hospitals and any and all other providers and facilities throughout the United States and the State of Georgia. The

registered agent for Bard is Stephen J. Long, 730 Central Avenue, Murray Hill, NJ 07974.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1332, as the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs and because there is a complete diversity of citizenship between Plaintiffs and each Defendant.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) by virtue of the fact that Davol and Bard's products were implanted into Plaintiff, Sandra Grizzard giving rise to the claims set forth herein below occurred in the State of Georgia, and therefore Defendants are subject to personal jurisdiction in this action.

## III. FACTS

7. This action involves the Bard Composix Kugel Mesh Patch ("Kugel Patch"), a medical device manufactured by the Defendants between 2001 and March 2006. The Kugel Patch was sold by the Defendants as an implant for use in hernia repair surgery.

8. A hernia occurs when a muscle is too weak to hold the contents behind the muscle in place and as such a rupture may occur which causes the contents to

push onto the muscle and the entire area to protrude. The Kugel Patch was designed and sold to treat abdominal or ventral hernias.

9. The Kugel Mesh line of products was first manufactured by Surgical Sense, Inc. in or around 1996. Bard acquired the Kugel Mesh line of hernia repair products in January 2000. In 2001 Bard introduced the Composix Kugel Mesh Patch through its subsidiary, Davol. The 510k application was submitted to the Federal Drug Administration ("FDA") on January 22, 2001. Following the 510k application the Kugel Mesh was authorized by the FDA as a Class II medical device.

10. Dr. Robert D. Kugel invented the Composix Kugel Mesh Patch, a polypropylene mesh prosthetic device developed to repair abdominal or ventral hernias. The design employs a "memory recoil ring" or "PET" coil ring which deploys once inserted. The ring is a hard solid material that surrounds the mesh. The device is inserted behind the muscular defect in the abdomen. The ring deploys and opens after insertion. This mechanism was to allow for a smaller incision. Davol represented the Kugel Mesh Patch to be an appropriate, cost-effective and suitable product for implantation.

11. Defects in the design and manufacturing in certain Bard Composix Kugel Mesh Patches are demonstrated by the memory recoil ring ("ring") when

deployed and open the patch after insertion may break under the stress of placement in the intra-abdominal space. Once this ring, that is a solid hard material, breaks it can cause serious injury such as intestinal perforations, migration of the broken ring through the abdominal wall into the pelvis; intestinal fistulas (abnormal passageways between the intestine and other organs); abscess; sepsis and death.

12. When the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death the product may be removed from the market or recalled by the FDA. The FDA issued a Class I recall, the highest level of recall available, of the Bard Composix Kugel Mesh Extra-Large Oval Patch, Large Oval Patch and Large Circle Patch.

13. On January 13, 2006, Davol and Bard announced the recall of the Kugel Mesh Extra-Large Patch. In March 2006 the Defendants also announced the recall of the Large Patch as well.

14. The following products were subject to the FDA recall:

| | | |
|---|---|---|
| PC#0010206 Bard Composix Kugel | Extra Large Oval | 8.7" x 10.7" |
| PC#0010207 Bard Composix Kugel | Extra Large Oval | 10.8" x 13.7" |
| PC#0010208 Bard Composix Kugel | Extra Large Oval | 7.7" x 9.7" |
| PC#0010209 Bard Composix Kugel | Large Oval | 6.3" x 12.3" |

| | | | |
|---|---|---|---|
| PC#0010202 | Bard Composix Kugel | Large Oval | 5.4" x 7" |
| PC#0010204 | Bard Composix Kugel | Large Circle | 4.5" |

15. At all times herein the Defendants knew, or in the exercise of reasonable care should have known that the aforesaid products were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, were not suitable for the purpose they were intended and were unreasonably likely to injure the products' users.

16. Defendants did not timely apprise the public and medical providers who were users of the defective product, despite Defendant's knowledge that the rings failed and serious injuries occurred.

17. Defendants's conduct, as described in the proceeding paragraphs amounts to conduct purposely committed, which Defendants knew was dangerous, heedless and reckless, without regard to consequences or the rights and safety of the Plaintiffs.

18. The Bard Composix Kugel Mesh Patches present an unreasonable risk of danger and injury in the following respects:

a. the memory recoil of the Bard Composix Kugel Mesh Extra Large and Large Patches are likely to malfunction after being implanted.

b. the Bard Composix Kugel Mesh Extra Large and Large Patches were defectively designed;

c. the Bard Composix Kugel Mesh Extra Large and Large Patches did not as sold meet the expectation of the ordinary medical provider or consumer in that the device may result in injury rather than the use as promoted.

d. the Bard Composix Kugel Mesh Extra Large and Large Patches were inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

e. such further and additional defects as discovery and evidence reveal.

19. Plaintiff Sandra Grizzard became symptomatic for pain and discomfort in the anterior abdomen and had a reducible 6-8 cm bulge in the lower abdomen consistent with a ventral hernia with the possibility of hernias in the upper abdomen. Ms. Sandra Grizzard was 61 years of age at the time the defective products were implanted during a routine outpatient procedure.

20. On December 9, 2005, Sandra Y. Grizzard was admitted to Newnan Hospital, Newnan, Coweta County, Georgia for a repair of an anterior abdominal wall hernia with graft.

21. Prior to surgery Ms. Grizzard was treated for medical conditions by her primary care physician in preparation for the surgical procedure. Her medical history included: 1) Type 2 diabetes mellitus; 2) benign hypertension; 3) asthma; 4) gastric esophageal reflux disorder; 5) morbid obesity; 6) hyperlipidemia; 7) gout; 8) degenerative arthritis and 9) seasonal allergies.

22. There was also a past surgical history of: 1) cholecystectomy; 2) Total abdominal hysterectomy with bilateral salpingo-oopherectormy; 3) right knee arthroscopy 4) right knee replacement and 5) carpal tunnel release.

23. Plaintiff Sandra Grizzard underwent a routine hernia repair surgery at Newnan Hospital on December 9, 2005 and during this surgery the following Bard Composix Kugel products labeled as follows, Lots Numbers: 43CPD365, 43JOD271, 43JOD277 were used to repair Ms. Grizzard's hernia.

24. As a result of the defective product, Plaintiff Sandra Grizzard, has undergone multiple surgeries and suffered extensive complications arising from the insertion of the defective products listed above.

25. While the procedure was scheduled as an outpatient procedure Ms. Grizzard required critical care monitoring due to adverse respiratory effects postoperatively.

26. As a direct and proximate cause of Defendants' conduct and the

recalled Composix Kugel Mesh Patches, Plaintiff Sandra Grizzard suffered severe injury that is continuing in nature and requires medical monitoring and care.

27. On January 23, 2006, Ms. Grizzard was admitted to Newnan Hospital with fever, nausea, vomiting, dehydration and electrolyte imbalance. Ms. Grizzard reported that she was having 4 to 5 watery stools per day in addition to her other symptoms. Since her surgery on December 9, 2005 Ms. Grizzard had a 35 pound weight loss.

28. A CT scan with contrast of the pelvis revealed a large fluid collection beneath the anterior wall of the upper pelvis containing air bubbles.

29. After evaluation and diagnosis of an surgical abscess, Ms. Grizzard underwent surgery to drain the abscess on January 25, 2006.

30. Based on the development of the abscess the incision required healing by secondary intention. Antibiotics were administered and discharge instructions were provided when Ms. Grizzard was discharged on January 26, 2006.

31. Ms. Grizzard was again admitted to Newnan Hospital on April 15, 2006 with a diagnosis of infection and inflammatory reaction due to the prosthetic device/implant/graft with a secondary diagnosis of acute parametritis and pelvic cellulitis. Surgical intervention was required. This hospitalization required a ten day hospital stay from April 15, 2006 until April 25, 2006.

32. At the time of Ms. Grizzard's admission to the hospital April 15, 2006 the fever, nausea and vomiting previously noted in January 2006 had returned. A CT scan with contrast reported a "reaccumulation of large abscess cavity within the anterior pelvis at the site of prior hernia repair. A large ventral hernia also remains."

33. Antibiotics were started and preparation was made for exploratory surgery. According to the operative report the abscess was anterior to the lowest piece of the implanted patch. The infection was anterior to the inferior patch and when the abscess was opened the pus exuded. The lower patch was removed and the abscess was drained. The remaining two patches were removed due to the extent of the abscess.

34. The small bowel required resection as a small area was stuck to the pack and small enterotomies were noted with leakage from the bowel. After the removal of the patches and the bowel resection the ventral hernia required repair.

35. The pathology report identified the specimen received from the abdomen as "a mass of abdominal wall mesh material aggregating 11 cm. The largest fragment is ovoid and, when opened, measures 28 cm. in diameter. It apparently contained wire."

36. Postoperative care was provided as an inpatient until April 25, 2006.

The treatment included general patient care, medication administration, glucose monitoring, vital sign monitoring as well as other skilled care documented in the medical record.

37. Ms. Grizzard required wound debridement in May 2006 and regular, consistent follow up since the patches were removed. In October 2007 when her wound did not continue to heal, she is requiring hyper baric oxygen therapy for wound healing. The wound has not healed as of the filing of this action.

38. Billy Jack Grizzard was required to take responsibility for the household duties, provision of child care for grandchildren not to mention the lack of love and affection from Ms. Grizzard due to her injury, pain and suffering during this time.

## IV.
## COUNT 1 NEGLIGENCE

39. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

40. Defendants at all times relevant herein, had a duty to exercise reasonable care in the design, manufacture, labeling, testing, distributing, advertising, marketing, promoting, warning and/or sale of the Kugel Mesh Patch into the stream of commerce, including a duty to ensure that the Kugel Mesh

Patches did not cause users to suffer from reasonably foreseeable, dangerous side effects and serious health problems.

41. Defendants failed to exercise ordinary care in the design, manufacture, labeling, testing, distributing, advertising, marketing, promoting, warning and/or sale of Kugel Mesh patches into the interstate commerce, and Defendants knew or should have known that Kugel Mesh Patches created a high risk of unreasonable and foreseeable dangerous side effects, including death.

42. Defendants breached their duty to Plaintiffs as follows:

a. In the designing, manufacturing, labeling, testing, advertising, marketing, promoting, distributing, warning and or sale of Kugel Mesh Patches such that there was a failure to use ordinary care to avoid causing substantial harm to individuals receiving implants of the Kugel Mesh Patches;

b. By failing to follow U.S. Food & Drug Administration manufacturing practices that resulted in Defendants' failure to properly investigate adverse effects of implanted Kugel Mesh Patches from year 2001 to 2006 and failing to document reports of the adverse effects;

c. By failing to exercise acceptable and adequate quality control

procedures resulting in inaccurate and inadequate testing to determine whether the patch was safe and effective;

d. By failing in the duty to disclose or warn that adequate testing had not been performed which would have demonstrated that the use of Kugel Mesh Patches posed serious potential harm and Defendants' failed to warn of the harm and the severity of said harm and associated medical conditions caused by the Kugel Mesh Patch;

e. By failing to use qualified professionals and staff in the design, manufacture, testing, labeling, packaging, advertising, marketing, promoting, distributing, warning and/or sale of the Patch;

f. By failing to report the accurate results of testing for safety and efficacy performed on Kugel Mesh Patches and failing to report said results to prevent harm to other consumers by refusing to withdraw Kugel Mesh Patches from the U.S. Market based on reports concerning and relating to adverse events in patients where the above referenced Kugel Mesh Patches were implanted.

g. By failing in a duty to make sure the Kugel Patch would maintain its proper function without damage once implanted in the consumer as expected prior to implantation.

43. Defendants knew or should have known that bodily injury was likely to occur as a result of the defective and unreasonably dangerous design and manufacture of the Kugel Mesh Patch products as identified above.

44. Plaintiffs as a result of the defective and unreasonably dangerous Patch have sustained and will continue to sustain damages in the future as follows:

a. Medical expenses in the past and future;

b. Permanent physical injury to her body as a whole including disfiguration;

c. Loss of income and/or diminution of the ability to earn income in the future;

d. Loss of enjoyment of life and/or loss of companionship and consortium;

e. Physical pain and mental and emotional pain and suffering as well as anxiety in the past and future;

45. Punitive damages should be awarded based on the egregious conduct of the Defendants who continued to market, promote, sell and distribute the Kugel

Mesh Patches as identified with actual knowledge that the surgical product for repair of hernias was failing in its intended use and showed deliberate indifference and conscious disregard for the public who trusted the Defendant to provide a safe product. Defendants have a history of showing deliberate indifference and disregard for the public and punitive damages should be awarded.

WHEREFORE, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs, and for other such relief this Court deems just and appropriate.

**COUNT 2 STRICT LIABILITY PURSUANT TO O.C.G.A. §51-1-11**

46. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

47. Defendants DAVOL and BARD engaged in the business of designing, manufacturing, testing, labeling, packaging, advertising, marketing, distributing, promoting and selling Kugel Mesh Patches to medical providers and practitioners in the State of Georgia as well as the entire United States. They have knowingly and intentionally placed the device into the stream of commerce with full knowledge that said device would be used in the surgical repair of hernias.

48. Defendants intended for the Kugel Mesh Patches to be surgically implanted into members of the general public, including the Plaintiff Sandra Grizzard, and knew or should have known that the product would be surgically implanted into members of the general public, including Plaintiff Sandra Grizzard;

49. Implantation of the Kugel Mesh Patch was reasonably foreseeable into Plaintiff Sandra Grizzard and was used by the Plaintiff Grizzard for the purpose as it was intended by the Defendants.

50. Defendants were situated in the chain of commerce and designed, manufactured, tested, labeled, marketed, packaged, advertised, distributed and sold Kugel Mesh Patches in the course of its regular business;

51. Kugel Mesh Patches were used by Plaintiff Sandra Grizzard in a manner reasonably anticipated and foreseeable and in the manner for which it was intended;

52. Kugel Mesh Patches were in the same or substantially the same, defective and unreasonably dangerous condition when put to their reasonably anticipated and foreseeable use;

53. Kugel Mesh Patches lacked adequate warnings of its defective and unreasonably dangerous condition;

54. The devices identified above were defective and unsafe in the design,

manufacture and were defective at the time of distribution and implantation into Plaintiff Sandra Grizzard. The products were defective in that they were improperly designed, improperly manufactured and proper warnings did not accompany said devices indicating serious injury could occur to the user when used in their intended and foreseeable manner to wit:

a. The memory recoil ring of the Kugel Mesh Patch was likely to malfunction when implanted;

b. The Kugel Mesh Patch was not properly manufactured;

c. The Kugel Mesh Patch was defectively designed;

d. The Kugel Mesh Patch was not safe as the ordinary user would expect;

e. Defendants failed to warn of the above defects;

f. There may be additional defects as discovery and evidence reveal;

55. Defendants knew that the product or device would be used by the user without inspection for defects.

56. Plaintiff Sandra Grizzard used the product for its intended purpose.

57. Warnings of the danger that were known or reasonably scientifically known at the time of the distribution of the product was not provided by the

Defendants. The ordinary user of the product would not have known of the substantial danger involved with reasonably foreseeable use of the product. Defendants failed to warn of the known or knowable likelihood of injury arising from the danger and risks with the use of the product.

58. Plaintiff Grizzard did not know, nor did Plaintiff have reason to know, at the time of the use of the product the existence of the defects. These defects cause Plaintiffs the injuries described herein and the injuries from which the Plaintiffs continue to suffer.

59. Plaintiffs as a result of the defective and unreasonably dangerous Patch have sustained and will continue to sustain damages in the future as follows:

a. Medical expenses in the past and future;

b. Permanent physical injury to her body as a whole including disfiguration;

c. Loss of income and/or diminution of the ability to earn income in the future;

d. Loss of enjoyment of life and/or loss of companionship and consortium;

e. Physical pain and mental and emotional pain and suffering as

well as anxiety in the past and future;

60. Defendants' conduct in continuing to market, sell and distribute Kugel Mesh Patch after obtaining knowledge that the product was failing and not performing as represented and intended, showed deliberate indifference to and conscious disregard for the safety of the users of the product justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum for damages in according to the statute, punitive damages to punish and deter any such conduct in the future, together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief as the Court deems just and equitable.

**COUNT 3 STRICT LIABILITY FAILURE TO WARN**

61. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

62. Defendants DAVOL and BARD engaged in the business of designing, manufacturing, testing, labeling, packaging, advertising, marketing, distributing, promoting and selling Kugel Mesh Patches to medical providers and practitioners in the State of Georgia as well as the entire United States. They have

knowingly and intentionally placed the device into the stream of commerce with full knowledge that said device would be used in the surgical repair of hernias;

63. Defendants intended for the Kugel Mesh Patches to be surgically implanted into members of the general public, including the Plaintiff Sandra Grizzard, and knew or should have known that the product would be surgically implanted into members of the general public, including Plaintiff Sandra Grizzard;

64. Placement of the Kugel Mesh Patch into Plaintiff Sandra Grizzard was reasonably foreseeable and was used in the manner for which it was intended by all Defendants.

65. Defendants were situated in the chain of commerce and designed, manufactured, tested, labeled, marketed, packaged, advertised, distributed and sold Kugel Mesh Patches in the course of its regular business;

66. Kugel Mesh Patches were used by Plaintiff Sandra Grizzard in a manner reasonably anticipated and foreseeable and in the manner for which it was intended;

67. Kugel Mesh Patches were in the same or substantially the same, defective and unreasonably dangerous condition when put to their reasonably anticipated and foreseeable use;

68. Kugel Mesh Patches lacked adequate warnings of its defection and

unreasonably dangerous condition;

a. The memory recoil ring of the Kugel Mesh Patch was likely to malfunction when implanted;

b. The Kugel Mesh Patch was not properly manufactured;

c. The Kugel Mesh Patch was defectively designed;

d. The Kugel Mesh Patch was not safe as the ordinary user would expect;

e. Defendants failed to warn of the above defects;

f. There may be additional defects as discovery and evidence reveal;

69. Defendants did not give adequate warnings of the dangerous conditions that could arise with the intended use of the product or the defective nature of the Patches identified herein above when it knew or should have know of its dangerous and defective nature.

70. Warnings of the danger that were known or reasonably scientifically known at the time of the manufacture and distribution of the product were not provided by the Defendants. The ordinary user of the product would not have known of the substantial danger involved with reasonably foreseeable use of the product. Defendants failed to warn of the known or knowable likelihood of injury

arising from the danger and risks with the use of the product.

71. Plaintiff Sandra Grizzard used the product for its intended purpose and the product was in the same condition as when distributed and sold by the Defendants.

72. Plaintiff Grizzard did not know, nor did Plaintiff have reason to know, at the time of the use of the product the existence of the defects. These defects cause Plaintiffs the injuries described herein and the injuries from which the Plaintiffs continue to suffer.

73. Plaintiffs as a result of the defective and unreasonably dangerous Patch have sustained and will continue to sustain damages in the future as follows:

a. Medical expenses in the past and future;

b. Permanent physical injury to her body as a whole including disfiguration;

c. Loss of income and/or diminution of the ability to earn income in the future;

d. Loss of enjoyment of life and/or loss of companionship and consortium;

e. Physical pain and mental and emotional pain and suffering as well as anxiety in the past and future;

74. Defendants' conduct in continuing to market, sell and distribute Kugel Mesh Patch after obtaining knowledge that the product was failing and not performing as represented and intended, showed deliberate indifference to and conscious disregard for the safety of the users of the product justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief as the Court deems just and equitable.

**COUNT 4 BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY/MISREPRESENTATION**

75. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

76. Manufacturing, design, labeling, testing, distributing advertising, marketing, promoting and selling of the Kugel Mesh Patch were expressly warranted to be safe for use by Plaintiff Sandra Grizzard and other members of the public.

77. Defendants had knowledge at the time the express warranties were

made that the products to be used were in all respects fit, safe, effective and proper for the purpose intended. There were no warnings that the product had dangerous propensities that were known or should have been known by the Defendants at the time of distribution.

78. Plaintiffs relied upon the skill and judgment of the Defendants based on the express warranty when the product was used. The warranties and representations made by the Defendants were untrue resulting in severe injuries to the Plaintiffs and therefore the product was unsuited for the purpose intended.

79. Plaintiffs as a direct and proximate result of the defective and unreasonably dangerous Patch, warranted by the Defendant, will have sustained and will continue to sustain damages in the future as follows:

a. Medical expenses in the past and future;

b. Permanent physical injury to her body as a whole including disfiguration;

c. Loss of income and/or diminution of the ability to earn income in the future;

d. Loss of enjoyment of life and/or loss of companionship and consortium;

e. Physical pain and mental and emotional pain and suffering as

well as anxiety in the past and future;

80. Defendants' conduct in continuing to market, sell and distribute Kugel Mesh Patch after obtaining knowledge that the product was failing and not performing as represented and intended, showed deliberate indifference to and conscious disregard for the safety of the users of the product justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) which is fair and reasonable, punitive damages to punish and deter any such conduct in the future, together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief as the Court deems just and equitable.

**COUNT 5 BREACH OF IMPLIED WARRANTY**

81. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

82. Defendants designed, manufactured, tested, labeled, packaged, distributed and sold Kugel Mesh Patches used in the surgical repair of hernia and implanted into Plaintiff Sandra Grizzard's abdomen. Prior to the implantation the

Defendants impliedly warranted to Plaintiffs and to the health care providers, that the products were of merchantable quality and for the use in which they were intended.

83. At the time of the sale of the Kugel Mesh Patches the Defendants knew that they were intended to be used for the surgical repair of hernias and would be implanted into the body for the repair of hernias.

84. Plaintiffs and health care providers reasonably relied on Defendants' judgment, statements and indications that the Kugel Mesh Patches identified herein above were fit for the intended purpose.

85. When Defendants distributed the Kugel Mesh Patch they were distributed and sold by the Defendants who knew or should have known that the Patch identified herein above was unsafe for the intended purpose, not of merchantable quality as warranted by the Defendants, were dangerous when used for their intended purpose and when implanted in the consumer of the produce would cause serious injury to the user.

86. Plaintiffs as a direct and proximate result of the defective and unreasonably dangerous Patch, warranted by the Defendant, will have sustained and will continue to sustain damages in the future as follows:

a. Medical expenses in the past and future;

b. Permanent physical injury to her body as a whole including disfiguration;

c. Loss of income and/or diminution of the ability to earn income in the future;

d. Loss of enjoyment of life and/or loss of companionship and consortium;

e. Physical pain and mental and emotional pain and suffering as well as anxiety in the past and future;

87. Defendants' conduct in continuing to market, sell and distribute Kugel Mesh Patch after obtaining knowledge that the product was failing and not performing as represented and intended, showed deliberate indifference to and conscious disregard for the safety of the users of the product justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) which is fair and reasonable, punitive damages to punish and deter any such conduct in the future, together with interest on that amount at the legal

rate from the date of judgment until paid, for court costs and for other such relief as the Court deems just and equitable.

**COUNT 6 VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICE ACT PURSUANT TO O.C.G.A. § 10-1-399**

88. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

89. Defendants were situated in the chain of commerce and designed, manufactured, tested, labeled, marketed, packaged, advertised, distributed and sold Kugel Mesh Patches in the course of its regular business;

90. Defendants DAVOL and BARD engaged in the business of designing, manufacturing, testing, labeling, packaging, advertising, marketing, distributing, promoting and selling Kugel Mesh Patches to medical providers and practitioners in the State of Georgia as well as the entire United States. They have knowingly and intentionally placed the device into the stream of commerce with full knowledge that said device would be used in the surgical repair of hernias.

91. At the time of the sale of the Kugel Mesh Patches the Defendants knew that they were intended to be used for the surgical repair of hernias and would be implanted into the body for the repair of hernias.

92. Plaintiffs and health care providers reasonably relied on Defendants'

judgment, statements and indications that the Kugel Mesh Patches identified herein above were fit for the intended purpose.

93. When Defendants distributed the Kugel Mesh Patch they were distributed and sold by the Defendants who knew or should have known that the Patch identified herein above was unsafe for the intended purpose, not of merchantable quality as warranted by the Defendants, were dangerous when used for their intended purpose and when implanted in the consumer of the produce would case serious injury to the user.

94. Plaintiffs as a direct and proximate result of the defective and unreasonably dangerous Patch, warranted by the Defendant, have sustained and will continue to sustain damages in the future as follows:

a. Medical expenses in the past and future;

b. Permanent physical injury to her body as a whole including disfiguration;

c. Loss of income and/or diminution of the ability to earn income in the future;

d. Loss of enjoyment of life and/or loss of companionship and consortium;

e. Physical pain and mental and emotional pain and suffering as

well as anxiety in the past and future;

95. Defendants' conduct in continuing to market, sell and distribute Kugel Mesh Patch after obtaining knowledge that the product was failing and not performing as represented and intended, showed deliberate indifference to and conscious disregard for the safety of the users of the product justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) which is fair and reasonable, punitive damages to punish and deter any such conduct in the future, together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief as the Court deems just and equitable.

**COUNT 7 LOSS OF CONSORTIUM**

96. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

97. Plaintiff Billy Jack Grizzard is the long-time spouse of Plaintiff Sandra Grizzard. Plaintiffs have lived together for over thirty-five years.

98. Plaintiff Billy Jack Grizzard over the course of their marriage has

relied on Plaintiff Sandra Grizzard to provide companionship, care for the children and now grandchildren.

99. Defendants DAVOL and BARD engaged in the business of designing, manufacturing, testing, labeling, packaging, advertising, marketing, distributing, promoting and selling Kugel Mesh Patches to medical providers and practitioners in the State of Georgia as well as the entire United States. They have knowingly and intentionally placed the device into the stream of commerce with full knowledge that said device would be used in the surgical repair of hernias.

100. Two Kugel Mesh Patches were implanted into Plaintiff Sandra Grizzard to surgically repair her abdominal hernia.

101. At the time of the sale of the Kugel Mesh Patches the Defendants knew that they were intended to be used for the surgical repair of hernias and would be implanted into the body for the repair of hernias.

102. Plaintiffs and health care providers reasonably relied on Defendants' judgment, statements and indications that the Kugel Mesh Patches identified herein above were fit for the intended purpose.

103. When Defendants distributed the Kugel Mesh Patch they were distributed and sold by the Defendants who knew or should have known that the Patch identified herein above was unsafe for the intended purpose, not of

merchantable quality as warranted by the Defendants, were dangerous when used for their intended purpose and when implanted in the consumer of the produce would case serious injury to the user.

104. Plaintiff Sandra Grizzard had defective Kugel Mesh Patch implanted surgically in her body to repair an abdominal hernia which resulted in serious injury and the wound as a result of the injury still over an almost two year period has not healed.

105. Plaintiff Billy Jack Grizzard as a direct and proximate result of the defective and unreasonably dangerous patch, warranted by the Defendants, has sustained and will continue to sustain damages in the future as follows:

a. Loss of enjoyment of life and/or loss of companionship and consortium;

b. Emotional pain and suffering as well as anxiety in the past and future;

WHEREFORE, Plaintiff Billy Jack Grizzard requests a judgment against DAVOL and BARD for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) which is fair and reasonable, punitive damages to punish and deter any such conduct in the future, together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief

as the Court deems just and equitable.

Respectfully submitted this 16th day of November, 2007.

CAROL ORLECK
STERNLIEB & ORLECK, PC
Attorney for Petitioners

5 East Broad St.
Newnan, GA 30263
Phone No.: 770-253-9559
Fax No.: 770-253-6002
GA Bar No.: 554305

DIANE STERNLIEB, PC
STERNLIEB & ORLECK
Attorney for Petitioners

126 Newnan St.
Carrollton, GA 30116
Phone No.: 770-214-5933
Fax No.: 770-214-9950
GA Bar No.: 680477